Introduce yourself to the court. My name is Ashley Johnson. I'm from OSAD. You're going to have to speak louder or you're not going to be able to hear me. I'm Ashley Johnson. See, that's not a microphone. It's just the court that you're saying. Okay. My name is Ashley Johnson. I'm from the Office of the State Appellate Defender. Good morning. Assistant State Attorney Noah Montague on behalf of the people. Okay. Now the appellant, do you want to reserve some time for rebuttal? Yes, please. Just a few minutes. Okay. You may proceed. Good morning, and may it please the court. Throughout Mr. Jeffrey Williams' jury trial, the state chose to rely on a theme of responsibility and improperly argued that Mr. Williams' decisions not to speak to the police, not to plead guilty, and to have a trial were irresponsible. Let me just tell you, because he didn't say it that way. So, I mean, they never said not to speak to the police, not to testify. They said not to take responsibility. So don't make it better than it is. All right. Because that's just kind of... All right. Well, Your Honor... That's the implication that you're saying that he's talking about. But he never said the defendant never talked to the police, or the defendant never told his story, or the defendant never did that. Well, Your Honor, the prosecutor compared Mr. Williams to the co-defendant and to the other witnesses in the case. And he did bring up the fact that he did not speak to the police, and that he did not plead guilty like Ms. Biles did, and that he was having a trial instead as a way to avoid his responsibility in this case. And Mr. Williams was entitled to exercise his constitutional right to have a trial in the state's argument as well as its other errors. But let's assume for the sake of argument that that was an error. How was that reversible error? Because so in this case, Mr. Williams' conviction came down to the credibility of three witnesses. And here we had three witnesses who were not consistent. They were contradictory of one another. I mean, you had Ms. Biles who testified that she didn't keep guns in the apartment, but then later she said that she gave the gun that was underneath her bed. Weren't they consistent about the fact that he had a gun? Yes, they were consistent about that bare fact. But that alone does not make them consistent and credible witnesses because their stories were all over the place. They weren't in agreement about who retrieved the gun. They weren't in agreement even about the color of the T-shirt that the gun was wrapped inside of. They weren't in agreement about even the number of guns that were possibly in the apartment. How important is the color? I mean, it's an important detail in that it goes towards them having the same story. You need to have a consistent story in order to be considered a credible witness. And here it was really important that these witnesses be credible because that's all the evidence that the state brought forth to show that Mr. Williams was culpable in this case. There was no physical evidence that linked him to this case. And so under SEBI, when the case comes down to the credibility of witnesses, the evidence is closely balanced. And here the evidence was closely balanced because these witnesses weren't credible. They weren't on the same page about their stories. You had an 8-year-old, I think a 12- or 13-year-old, and a 30-something-year-old. They all said that the mother and the guy had some kind of relationship. They all said he spent the night on occasion. They all said they saw him with a gun. I think one child described his shirt as black. The other child didn't know what color the shirt was. And the mother said it was multicolored. The little girl and the little boy, maybe not the little boy, but the little girl and the mother both said that he was angry about some argument that he had with somebody, and that's why he wanted the gun. I want to see the major discrepancies. They all said he left. Then we have him falling down on the ground and crying when he finds out the kid has been shot. And then when the police try to talk to him, he runs and tries to take off his clothes as they are trying to talk to him. I want to see where the major discrepancy is in their testimony. What contradicts them that their credibility is so terrible? Well, as you said, so Ms. Biles and Destiny, they both did say that Mr. Williams wanted a gun because he had gotten into it with someone. However, Ms. Biles said that that conversation took place over the phone, and Destiny said that this took place in the actual bedroom. She heard it then. I mean, he could repeat the same thing. But Ms. Biles said the conversation took place on the phone. And also, the kids said that Mr. Williams got the gun from Ms. Biles inside the bedroom, whereas Ms. Biles said that they got the gun, that she gave him the gun at the back door of the apartment. So that's a discrepancy right there. It is. We're talking about an 8-year-old, a 12- or 13-year-old, and a grown-up. I'm talking about the heart of the case. Did the guy get a gun from that house? Did the child get shot? Was there a bullet recovered in the cabinet? Was a bullet fragment thrown out or a bullet shell casing thrown out and the police recovered? Did the defendant run? I'm looking for something that really attacks somebody's credibility. You and I are standing here, and there's, I don't know, 15 people, 10 people in here. Our conversation, everybody's going to say it a little bit differently. You don't have to be precisely the same to have credibility. But you should be on the same page about what happened. I mean, and also there was testimony about how they initially lied to the police about what happened. So there's already – Let me just stop you for a minute. Despite all these discrepancies, all three witnesses were in agreement on the fact that the defendant was ultimately in possession of the gun wrapped in the shirt when he was in the kitchen of the third-floor apartment. Isn't that true? Yes, but that – I mean, isn't that enough? No, that bare fact alone cannot – it cannot – you cannot say that they're credible just because they got that one bare fact. It only determines the credibility of the witnesses here. And they apparently found the witnesses credible. Well, we don't know for sure because the State had this running theme that because Mr. Williams was having a jury trial and he didn't plead guilty, that he was basically – he was essentially running away from his responsibility. And so he was essentially guilty as well. So the jury could have, having heard this theme and this argument being given to them throughout the trial, the jury could have very well – Yeah, but you're speculating. You're speculating. But go ahead. It's your argument. Well, nonetheless, the jury still could have – Mr. Williams could have been acquitted had the State not had this running theme of he's irresponsible for having a trial, he's irresponsible for wasting your time because he should have just pled guilty the way that – Yeah, you're really arguing the second prong. Yes, I am. Yes, exactly. Okay. I'm also arguing closely balanced as well. I know you're arguing the first prong, but now you've jumped to the second prong. Well, no, I'm also arguing closely balanced as well because the evidence here was closely balanced in that the – the testimonies of the witnesses weren't consistent and they were incredible. So, like I said, you had no consistency about, you know, what happened before or after this gun was allegedly in possession of Mr. Williams. And then you also had them initially lying to the police in that Treshawn and Ms. Biles told Mr. – told the police that Treshawn was shot outside. And Destiny told the police that the gun was given to her – to them by their – by her grandmother. So they weren't – they were – their credibility was already, you know, up – you couldn't tell if they were credible or not. They weren't credible just from their testimonies not coinciding. And so, yes, the evidence was closely balanced in this case. Okay. Do you want to save some time for one more? Yes, I will. Good morning. May it please the Court, Assistant State's Attorney Noah Montague, on behalf of the people in this matter. Your Honors, this case is here before the Court because this defendant had been convicted of multiple felonies and he was in possession of a gun. The gun, of course, was left unattended with two children. One of them accidentally shot the other. The investigation into how that happened then led to the arrest of both the defendant and the child's mother, who was the defendant's girlfriend at the time. And the defendant was charged and convicted with armed habitual criminal. The first thing to really note in this case is how factually simplistic the case is. Because while there is a lot of discussion of multiple facts and things here, really, with armed habitual criminal, you're just talking about two elements. The offense only has two elements. Do you have the prerequisite convictions? And the defendant stipulated that he did. So then the only question then presented is, do you – did you possess a gun? So there was really only one factual issue in the entire trial. And all three witnesses, the only three eyewitnesses to testify in the case, all testified consistently that they saw this defendant in possession of a gun at the same date, place, and time. So that alone, with the stipulation as to his convictions, was enough to convict this defendant. Now, the other thing to notice about how factually simplistic this case is, is that the defense that was presented at trial, which you can see in the defendant's argument, the defense theory of the case, which was necessary to counter this consistent eyewitness testimony, was that, well, the mother, having told the children to lie once, somehow told them to lie again, and to lie by saying the defendant possessed the gun. Now, this defense theory, though, is not only lacking in basis in the record, because there is no evidence of her actually telling the children this, but it's actually disproven by the record, because the record shows that the mother told the children to exonerate her and defendant, to say that there was a drive-by shooting. And then she gave the keys to the apartment to the defendant, and then the gun was never found. We don't know how that occurred, of course. But the mother told the police this in the hospital while the child was being treated in the hospital, but then the mother was taken into police custody from the hospital room, removed from the hospital. In police custody, she repeated this lie that she had told about the drive-by shooting. So from the time the mother was in custody, and she was in custody, and then she was charged, and she pled guilty, and she was given a prison sentence. From that point on, she was separated from the two children, who then, after the one child, after he was confronted by the grandmother and told to tell the truth, and then the other child separately, because the one was in the hospital and the one was staying at home with the grandmother, both told the truth, or told what the testimony would be at trial. So there was no possibility of coordination between the mother and the two children because they were physically separated before they all told the same version of events. So the defense theory at trial was disproven. Let me just add, because you're reiterating the facts of the case. Do you have first prong or second prong error? Okay. Getting to the two legal issues of the plain error analysis, well, once you see that the state only had to prove one thing, all the evidence presented proved it consistently, all testified the same, and the defense theory presented at trial was disproven, there cannot be closely balanced evidence under Illinois law. Because even in Piatkowski, which is really the one case cited here by anyone, where you have a case where the defendant presented evidence in Piatkowski, but the only evidence he presented was a detective's testimony and some stipulations that were meant to impeach the state's case. In Piatkowski, what the court held was that because the state's case was so weak, that that was simply enough to say that it was closely balanced. But if you look at the analysis in Piatkowski, the court repeatedly emphasized that they didn't know the person. They only had a few seconds to see him. His head was sticking out of the window of a van at night. It was a poor chance to see him. Well, that's not the case here. Here you have someone they knew, someone they had seen frequently, someone they recognized. They were in a room in broad daylight with him. And so none of the facts of Piatkowski support this. And so here you have a strong case from the state and a disproven defense theory. So the evidence cannot be closely balanced. Okay. We've got the first prong. And on to the second prong. The second prong is the argument about responsibility. Okay. Now, on to the second prong case. Well, the second prong issue here asks the question of when can cumulative error, based on prosecutorial misconduct, rise to the level of second prong error. And really, that brings us into the realm of people versus blue. And so in people versus blue, the court recognized three things that made the case rise to the level of second prong error. The first was the pervasiveness of the error. The second was that each error that the court recognized in blue, they said, quote, in and of themselves were enough to call into question the fairness of the trial, each error. And then what the court called synergy, the synergy of the errors, which sounds like some sort of marketing phrase that you're trying to get people to buy multiple products or something. But under Illinois law, synergy means essentially you did these one errors, such as you put in evidence that should not have been put in, in order to then argue that evidence and make an improper argument with it. And that's what the court found. And the court found that. It was illegal. There was inadmissible evidence. Correct. And then the inadmissible evidence. Correct. And it was horrendous. Yes. Inadmissible. It was very over the top. But what you see in blue is those three things are absent here, because you don't have pervasiveness of the error. The error exists throughout the argument, but there's only one trial error alleged here, and that error is when the state fronted the mother's conviction, the state mentioned that she had her prison sentence. But that error was never repeated. And so not only do you not have pervasiveness, because there's only one error in the entire trial portion of the trial, but there's no synergy either because that error isn't then brought into the argument. And then there's the question of whether each error in and of themselves is enough to question the fairness of the trial. I'm sorry. There were several issues that were raised as error. Do you admit that any of them were error? Well, certainly the people are not contesting the propriety of the themed argument of response. All right. The people are not contesting the propriety of that argument. And in the people's brief, we have contested several of the other lesser errors. The two errors of misstatement of evidence, you know, the repeated mentions of the victim's age, which the state maintains was relevant because the defense theory was that the child was susceptible to the mother because of his age. So his age was an issue at the trial. So the people maintain that most of the other errors that are alleged here are not errors or that they're so de minimis that they couldn't have possibly prejudiced the defendant. So they don't rise to the level of the error seen in blue. And so that blue is entirely distinguishable here. And Johnson, the portion of Johnson dealing with the defendant Johnson, is applicable here. And importantly in Johnson, the defendant in Johnson's, or the appellate court in Johnson, found that it didn't need to go through each individual error to find cumulative error. And then the Supreme Court rejected that in Johnson and actually went through each individual error and didn't just say, well, cumulatively, these things are all bad. It just went through and said, is this error, is this error, is this error? So the court rejected that position. So for these reasons and the reasons stated in the people's brief, we'd ask that this court find that the defendant has forfeited these errors, that plain error does not apply. And we'd ask that you affirm this conviction. Thank you. So the State is arguing that these errors weren't pervasive. And here they were. The prosecution's main argument was that Mr. Williams was running away from responsibility by having a trial and that he's just conceded that that argument is correct. Yes. So let's deal with the other allegations of error. And these additional errors, they contributed to the State's argument that Mr. Williams was running away by having a trial. So with the guilty plea of Ms. Biles, the State attempted to use the guilty plea as a way of showing that Ms. Biles was a more responsible and believable witness, where it's clear from the record that she wasn't an honest witness. She was not a consistent witness in her testimony. And so the State was attempting to use her guilty plea as a way of reinforcing its argument that Mr. Williams was irresponsible for having a trial and not pleading guilty like she did. The State also misstated key evidence and confusing the jury into believing that Mr. Williams confessed ownership of the gun when that wasn't what he said. They also told the jury that Mr. Williams was seen in the kitchen with the gun when that's also not what he said. These things were done to strengthen its argument that Mr. Williams was irresponsible by having this trial and to make their case appear to be stronger. And the emphasis on the children's ages also was to go towards this running thing that Mr. Williams was irresponsible for having a trial and not pleading guilty. And so the State's attempt to penalize Jeffrey Williams for exercising his constitutional right was prosecutorial misconduct, and he respectfully requests that this Court grant him a new trial. Thank you. Well, I want to thank you guys for giving us a good oral argument. You did very well. And we will give you an order or an opinion shortly.